UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA GLORIA ZAPATA-LOZANO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. CV 10-5805 JC<br><br>MEMORANDUM OPINION |

**I.　SUMMARY**

On August 11, 2010, plaintiff Maria Gloria Zapata-Lozano ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; August 18, 2010 Case Management Order, ¶ 5.

///

1

1  Based on the record as a whole and the applicable law, the decision of the
2  Commissioner is AFFIRMED. The findings of the Administrative Law Judge
3  ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On January 21, 2004 and February 28, 2005, plaintiff filed applications for Supplemental Security Income benefits and Disability Insurance Benefits. (Administrative Record ("AR") 23, 24). Plaintiff asserted that she became disabled on February 1, 2001,[2] due to carpal tunnel syndrome, rheumatoid arthritis, joint, back, neck and right hand pain, diabetes, high cholesterol, headaches from medications, and depression. (AR 23, 113). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on October 18, 2007, and January 14, 2008. (AR 675, 687).

On July 22, 2008, the ALJ determined that plaintiff was disabled for the closed period of February 1, 2001 through March 30, 2003 but that, due to medical improvement (*i.e.*, the severity of plaintiff's rheumatoid arthritis no longer met the criteria of Listing 14.09D of 20 C.F.R. Part 404, Subpart P, Appendix 1), plaintiff was not disabled from April 1, 2003 through the date of the decision. (AR 24, 28-29). The ALJ also found that beginning on April 1, 2003 (1) plaintiff suffered from the following severe impairments: seronegative rheumatoid arthritis,

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2] Although plaintiff alleged that she became disabled on either February 1, 2001 or February 20, 2001, the ALJ gave plaintiff the benefit of the doubt and used February 1 as plaintiff's onset date. (AR 23).

diabetes mellitus, non-toxic goiter, spondylosis of the lumbosacral spine, hypertension, bradycardia, depression, and migraine headaches (AR 27); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 29); (3) plaintiff retained the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six out of eight hours, and sit for six hours in an eight-hour workday with certain exertional limitations[3] (AR 29); (4) plaintiff could not perform her past relevant work (AR 33); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically cafeteria attendant, assembly machine tender, and product assembler (AR 34); and (6) plaintiff's allegations regarding her limitations were not entirely credible (AR 30).

The Appeals Council denied plaintiff's application for review. (AR 6-8).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[3]The ALJ determined that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six out of eight hours, and sit for six hours in an eight-hour workday; could occasionally climb, balance, stoop, kneel, crouch, and crawl; and could frequently reach, handle and finger bilaterally. (AR 29).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal

error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

### IV. DISCUSSION

#### A. Substantial Evidence Supports the ALJ's Finding of Medical Improvement

##### 1. Pertinent Law

Once a claimant is found disabled under the Social Security Act, a presumption of continuing disability arises. See Bellamy v. Secretary of Health & Human Services, 755 F.2d 1380, 1381 (9th Cir. 1985) (citation omitted); Mendoza v. Apfel, 88 F. Supp. 2d 1108, 1113 (C.D. Cal. 2000) (citations omitted). Benefits cannot be terminated unless substantial evidence demonstrates medical improvement in the claimant's impairment such that the claimant becomes able to engage in substantial gainful activity. See 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594, 416.994; Mendoza, 88 F. Supp. 2d at 1113 (citations omitted).

///

///

"Medical improvement" is defined as:

> [A]ny decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . . .

20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).

Although the claimant retains the burden of proof, the presumption of continuing disability shifts the burden of production to the Commissioner to produce evidence to meet or rebut the presumption. Bellamy, 755 F.2d at 1381 (citation omitted).

### 2. Analysis

Plaintiff contends that substantial evidence does not support the ALJ's finding that her disability ended on April 1, 2003 due to medical improvement. The Court disagrees.

First, the medical evidence reasonably rebuts the presumption that plaintiff's disability continued beyond March 30, 2003. As the ALJ noted, on March 11, 2003, Dr. Nick Teophilov, a treating rheumatologist, indicated that although plaintiff still had disease activity, there was "no flare," and plaintiff then stopped treating with that doctor. (AR 29, 289, 335). From May through September 2003, Dr. Randall Gilbert, another treating rheumatologist, noted that plaintiff had "no definite joint swelling or rashes"and demonstrated good fist closure with no effusions. (AR 29, 474-75, 483, 485). The ALJ noted that, although plaintiff's symptoms waxed and waned thereafter, such symptoms were controlled with medication, and there were even long periods of time where plaintiff was apparently symptom free or at least suffered only mild symptoms that did not require treatment. (AR 30-31). For example, on June 17, 2003, Dr.

Gilbert discontinued plaintiff's treatment with Kineret, but restarted it on July 1, 2003. (AR 30, 482-83). Between plaintiff's September 2003 visit with Dr. Gilbert and a December 28, 2004 visit with Dr. Teophilov there is no evidence of treatment by a rheumatologist, which supports the ALJ's inference that plaintiff's condition remained relatively stable during that period with no significant flare ups. (AR 30, 475, 511, 670). Although plaintiff's symptoms increased in December 2004, Dr. Teophilov questioned why Kineret 100/d injections had been discontinued since plaintiff had a "good response" to the treatment without side effects. (AR 31, 511, 581, 624). On February 1, 2005 plaintiff was admitted to Glendale Memorial for "a one week history of fever and increasing joint pain." (AR 31, 506, 652, 665-67). Dr. Teophilov told Glendale Memorial doctors that plaintiff's Methotrexate was a "low dose." (AR 31, 652). On June 17, 2005, Dr. Teophilov observed that plaintiff's symptoms were "much better" when she was treated with Enbrel, and by October 18, 2005 plaintiff's dose of Enbrel was permanently increased to twice a week. (AR 31, 580, 620). Although on February 8, 2006, plaintiff complained about increased symptoms, she apparently stopped seeing Dr. Teophilov after that date. (AR 31, 579, 614). On October 4, 2007, Dr. Ramesh Kesavalu, another rheumatologist, noted plaintiff's history of rheumatoid arthritis, but observed "no clinical activity." (AR 31, 578, 612). Moreover, x-rays of plaintiff's hands have been consistently negative, as was an x-ray of her cervical spine. (AR 31, 282-83, 286, 662).

Second, while plaintiff alleges that her limitations have not dramatically changed, and that she continues to experience disabling limitations "similar" to those she had prior to April 1, 2003 (Plaintiff's Motion at 5), this Court will not second-guess the ALJ's reasonable determination that the medical records show medical improvement which would permit plaintiff to engage in substantial gainful activity, even if such evidence could give rise to inferences more favorable to plaintiff. See Robbins, 466 F.3d at 882.

Finally, even assuming, for argument's sake, that plaintiff's subjective symptoms of pain and fatigue were related to fibromyalgia, plaintiff fails to demonstrate functional limitations stemming from her fibromyalgia beyond those already accounted for in the ALJ's residual functional capacity assessment. In any event, as discussed below, the ALJ found plaintiff's subjective complaints of pain and fatigue lacking in credibility, irrespective of the pathological cause.

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

### B. The ALJ Properly Evaluated Plaintiff's Credibility

#### 1. Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d 880 at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to

conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. Burch, 400 F.3d at 681.

### 2. Analysis

Plaintiff contends that the ALJ inadequately evaluated the credibility of her subjective complaints. (Plaintiff's Motion at 7-9). The Court disagrees.

First, an ALJ may properly discredited a plaintiff's subjective complaints due to inconsistencies with the plaintiff's daily activities. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony). Here, the ALJ noted that in a March 4, 2004 Daily Activities Questionnaire, plaintiff stated that she attends school on week days. (AR 31, 94). The ALJ also noted that although plaintiff claimed that she was unable to sit for much more than an hour without pain, in 2006 plaintiff flew to Mexico. (AR 30).

///

Second, an ALJ may properly discredit plaintiff's subjective complaints based on unexplained failure to seek treatment consistent with the alleged level of severity. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (In assessing credibility, the ALJ may properly rely on plaintiff's unexplained failure to request treatment consistent with the alleged severity of her symptoms.); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999); see Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained). Here, the ALJ noted that there were periods of time when plaintiff sought no treatment from a rheumatologist at all. For example, although on February 8, 2006, plaintiff complained to Dr. Teophilov that she had "profound fatigue" secondary to aggressive rheumatoid arthritis, the ALJ notes that it appears that plaintiff stopped seeing Dr. Teophilov after that visit. (AR 31, 579, 614). The ALJ also noted that from September 2003 to December 2004 there is no evidence that plaintiff sought treatment from a rheumatologist. (AR 30, 475, 511, 670). In addition, the ALJ reasonably concluded that plaintiff's subjective symptoms were "generally controlled with medication," that plaintiff's physicians adequately addressed any side-effects from plaintiff's medications, and that plaintiff sought no treatment other than medication. (AR 31-33); cf. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (evidence that claimant "responded favorably to conservative treatment" undermines plaintiff's reports of disabling pain).

Finally, an ALJ may discredit a plaintiff's subjective symptom testimony due, in part, to the absence of supporting objective medical evidence. Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citing 20 C.F.R.

§ 404.1529(c)(2)).  Here, as discussed above, the ALJ reasonably determined that plaintiff's symptoms were controlled with medication, that there were long periods of time where at most plaintiff suffered only mild symptoms that did not require treatment, and that any significant flare ups in plaintiff's condition were not so lengthy as to prevent her from working.

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 24, 2011

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE